## PALMER *v.* PALMER AND ANOTHER.

*Homestead.    Gen. Sts. c.* 68, *s.* 13.

The power of the Court of Chancery under s. 13, c. 68, Gen. Sts., to order a transfer of the homestead right in premises to the owner of the residue, or a transfer of such residue to the owner of the homestead, or a sale of the premises and an apportionment of the proceeds between the parties, is not restricted in its exercise to cases where the land connected with the buildings does not exceed half an acre, but extends, as well, to cases where the homestead right is in farm buildings that exceed in value one thousand dollars.

Neither does said section give the owner of a homestead the option of surrendering or retaining the premises, by receiving the prescribed value of the statutory exemption or paying the excess above that of the appraised value of the premises. Whether either and which party shall retain the premises, or the premises be sold and the proceeds divided, is to be determined by the court according to the equities of the particular case.

THIS was a petition to the Court of Chancery, under s. 13, c. 68, Gen. Sts., for an order for the transfer of a homestead right on payment of its prescribed value.

The petition alleged that at the June Term of the Caledonia County Court the petitioner and Allen Pope procured a decree of

foreclosure on a mortgage that they then held on a farm in Danville, whereon Abial C. Palmer, the mortgagor, then lived, and that said decree had become absolute; that afterwards said Pope sold and conveyed his interest in said premises to the petitioner, and that the petitioner was the owner thereof; that Sophia Palmer, the wife of said Abial C., was living at the time of the execution of said mortgage, and was still living, but that she did not sign said mortgage, so that the petitioner had not acquired the homestead right in said premises; that the house and barns on said premises, and the half acre of land therewith, occupied by said Abial C. and said Sophia as a homestead, much exceeded $1000 in value, and that a severance of such homestead would greatly depreciate the value of the residue of said premises, and cause great inconvenience to all parties interested therein, and nearly ruin the petitioner's said property; and that the petitioner had offered said Abial C. and said Sophia the sum of $500 in discharge of their homestead right; but that they refused to accept the same and to discharge their said right. *Prayer*, that said homestead be ordered to be transferred to the petitioner on payment of $500 in discharge thereof.

Commissioners were appointed, who reported that the petitioner was the sole owner of all of said premises except the homestead right of the petitionees, having obtained title thereto by decree of foreclosure for $3,040; that the petitioner had paid other mortgages on the farm to the amount of $2,859; that there were further costs by reason of said foreclosure and a large amount of interest on said sums that the petitioner had paid; that petitionees occupied the premises as a farm, which consisted of 185 acres; that the buildings were well located—the barns on one side of the highway and the house on the other—and the house well supplied with water; that the house was very valuable to said farm on account of its site, its supply of water, and convenience of its situation with reference to the barns; and that said homestead could not be occupied in severalty without great inconvenience to all parties interested; that the house and half an acre of land with it were worth $2000, and that by reason of the location, surroundings, and supply of water, they were worth $2500 to the

petitioner for the purposes of said farm, there being no other location that would so well accommodate the farm.

The petitionees moved to dismiss, for that, as by the report of the commissioners it appeared that there was a homestead to be set out from other real estate, the petition should have been brought under s. 12 instead of under s. 13, c. 68, Gen. Sts. They also moved to set aside the report for uncertainty and insufficiency.

At the December Term, 1876, Caledonia County, the court, Ross, Chancellor, decreed that the petitionees convey their homestead right to the petitioner within ten days after payment by him of $500, such payment to be made by September 1, 1877 ; that in default of such conveyance, the decree should operate as such conveyance ; and that the petitionees should vacate the premises by October 1st. Appeal by the petitionees.

——— ———, for the petitionees.

The petitionees have the option under the statute to retain the homestead on payment of $1500—the difference between the appraised value of the homestead and the exemption. *May order*, in the statute, is equivalent to *shall order*. Gen. Sts. c. 68, s. 13 ; REDFIELD, J., in *Downer* v. *Hazen*, 10 Vt. 418 ; 1 Swift Dig. 13 ; *Minor* v. *Mec. Bank of Alexandria*, 1 Pet. 64.

The petitioner's remedy was under s. 12, c. 68, Gen. Sts. Sec. 13 is applicable only to cases where there is not over half an acre of land with the homestead.

*Belden & Ide*, for the petitioner.

The petitionees having filed no answer, the facts set forth in the petition are admitted to be true. It follows that the orator through default of the petitionees has been compelled to take the farm in payment of the petitionees' debts at about $6000, and that the value of the farm is about $5000, from which the homestead is to be deducted. The commissioners find that it would injure the orator to the amount of $2500, to have the house and half acre of land, with the water, cut out and owned and occupied by another. And the report fixes the value of the homestead

Palmer *v.* Palmer et al.

premises at $2000. It would, therefore, be inequitable to order the petitionees to take the whole at $2000, and pay $1500 in money to the petitioner.

By consenting to the appointment of the commissioners, the petitionees have submitted the matter to their decision. Their decision is therefore final. It only remained for the court to enforce the decision and finding by proper decree and process.

The statute, s. 13, c. 68, Gen. Sts., gives no such option as the petitionees claim. It expressly provides that " the court *may order*," &c. The power thus given to the court is not limited. The language of the statute shows clearly that the whole matter rests in the discretion of the court, subject to the sole limitation that the homestead holder cannot be *compelled* to take the whole premises except at his option. But here the petitionees never made any " option " either before the commissioners or before the chancellor. It is now too late.

It is objected that the court has no jurisdiction because the farm, of which the house and land are a part, exceeds half an acre in area. This objection is not tenable.

The orator tendered the defendant $500 before commencing these proceedings, and it was refused. The litigation was made by the petitionees, and they should pay the costs.

The opinion of the court was delivered by

POWERS, J. This is a petition addressed to the Court of Chancery, based upon s. 13, c. 68, Gen. Sts., setting forth that the petitioner has title to certain real estate in Danville in which the defendants have a homestead right, and that the value of the homestead estate, with not exceeding one half acre of land thereto attached, exceeds the sum of one thousand dollars. Vide ss. 12 and 13, c. 68, Gen. Sts. The defendants insist that s. 13 applies only to cases where in point of fact not exceeding one half acre of land is connected with the buildings, and hence it cannot apply to a farm, as in the case at bar. This view of the statute practically confines its operation to village property, and such doubtless has been its practical construction in some localities.

40

Under the provisions of s. 12, the homestead is set out to the homesteader in the same manner as in case of the levy of executions ; and thereafterwards the homesteader and owner of the residue come into a species of joint occupancy ; neither party can oblige the other to buy or sell ; nor can the court compel a sale. If the severance in this case were made under s. 12, as claimed by the defendants, the practical result would be to give the defendants property worth $2000, when they are only entitled to property worth $500, and to take from the petitioner a corresponding amount, when he is entitled to all but $500.

The same injustice would be found to exist in the case of village property. A debtor has a house, barn, and garden, worth $1200. His creditor levies his execution upon the premises, and the homestead is set out. Of what value is the residue ? The creditor gets nothing, ordinarily, that he can occupy—nothing that he can rent or sell, and hence he has no inducement to incur the expense of a levy, and the homestead exemption is practically made effectual to the amount of $1200. To remedy such injustice, s. 13 was passed ; and under it, the Court of Chancery has full power to measure out justice to the parties in accordance with the spirit of the law creating the exemption.

This section does not limit the power of the court to village property. It is only limited to cases where the value of the property, defined and specified in s. 1 as property constituting a homestead, exceeds one thousand dollars in value. If the Legislature had intended to restrict the remedy to village premises, it is singular that they omitted to say so. The injustice to the owner of the residue in the case of farm property is as great as in the other. The language of the section is, " whenever *any* dwelling-house," etc. ; showing that the statute is to have general application to homestead property within the limited value.

The homestead estate is limited in value to the sum of five hundred dollars ; and the rights of creditors or other persons owning the residue of the real estate, are left unprejudiced by it. They are left to be adjusted under this section upon common principles of honesty and equity.

The petitioner is clearly entitled to the remedy provided in s.

Palmer *v.* Palmer et al.

13. He has forced upon him a farm worth less than it cost him, and the defendants propose to carve out the middle of it at a nominal price and leave him the balance. Having forced him to take the farm, it is proposed to destroy its value as a farm, by allowing the defendants to own the buildings in the middle of it. The defendants take the picture, the petitioner gets the frame. The statute does not give the homesteader the right or option of paying the balance of the appraised value of the buildings and retain them ; but the court is to determine in the particular case, in view of the equities apparent, whether to sell the whole property and divide the proceeds, or compel the creditor to buy the homestead, or allow the homesteader to buy the residue if he is willing.

The Legislature have given a practical construction to their meaning in the section in question. No. 67 of the Acts of 1864 empowers the Probate Court to order a sale of the homestead belonging to the widow and children of deceased persons, whenever it cannot profitably be severed from the residue of the real estate, as such severance would depreciate the value of the residue ; and this remedy is available to either of the parties in interest.

No action of the Legislature can anywhere be found that countenances the doctrine that the rights of creditors are to be impeded beyond the limits set in s. 1 of the Homestead Act.

The decree of the Court of Chancery is affirmed, and the cause remanded.